**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MICHEAL OLAROTIMI ABIKOYE, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 26-3485-BAH |
| THE HUNTINGTON NATIONAL BANK AND SECURE COLLATERAL MANAGEMENT, LLC, | * | |
| Defendants. | * | |

* * * * * * * * * * * * * *

## MEMORANDUM AND ORDER

Plaintiff Micheal Olarotimi Abikoye ("Plaintiff") filed the above-captioned complaint pro se together with an emergency motion for a temporary restraining order, ECF 3, and an emergency motion to proceed in forma pauperis, for expedited screening, for issuance of summonses, and for service by the United States Marshals Service, ECF 4, followed by a corrected motion for leave to proceed in forma pauperis, ECF 7.[1] The corrected motion to proceed in forma pauperis, ECF 7, shall be granted.

Section 1915(e)(2)(B) of 28 U.S.C. requires this Court to conduct an initial screening of this complaint and to dismiss any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1723 (2020). The Court is mindful of its obligation to liberally construe a complaint

[1] Plaintiff's corrected motion to proceed in forma pauperis appears to have been incorrectly docketed as a motion filed by The Huntington National Bank, rather than Plaintiff. The Clerk's Office will be directed to correct the motion's docket entry text on CM/ECF.

filed by a self-represented litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented").

Here, Plaintiff's complaint fails to state a claim upon which relief can be granted for any of his federal claims, and there is no apparent basis for diversity jurisdiction. Because the Court's jurisdiction hinges on an adequately pled federal claim, Plaintiff will be provided the opportunity to file a supplement to his complaint.

## I. BACKGROUND

Plaintiff brings suit against defendants The Huntington National Bank ("Huntington") and Secure Collateral Management, LLC ("SCM").[2] *See* ECF 1. The complaint concerns a 2016 Honda Civic that Plaintiff financed in August 2025 through a "retail installment sale contract" totaling 72 monthly payments of $432.46. *Id.* at 2 ¶¶ 13–14. The terms of the contract are governed by the Maryland Credit Grantor Closed End Credit Provisions. *Id.* at 3 ¶ 15. Plaintiff "pleads the operative transaction as a dealer-originated retail installment credit sale rather than a separate direct cash loan independently advanced by Huntington to Plaintiff." *Id.* ¶ 16. Plaintiff alleges that Huntington's records "have reflected objective conflicts concerning original balance, opened date, last-payment date, term, current balance, delinquency status, and dispute notation." *Id.* ¶ 18. These conflicts include, among other conflicts, different original balances ($20,120 in bureau data versus $21,320.69 in the contract), different opening dates (August 1, 2025, versus

[2] The facts provided in this section are taken from the complaint and attached exhibits and are assumed true for the purposes of this memorandum and order.

August 23, 2025), different last payment dates (February 1, 2026, versus February 23, 2026), and a term of zero versus 72 months. *Id.*

In January 2026, Plaintiff mailed a written dispute pursuant to 15 U.S.C. § 1692g, presumably regarding these differences though the complaint does not specify. *Id.* ¶ 19. Plaintiff "later sent direct disputes, consumer-reporting disputes, requests for owner/master-servicer identification, assignment proof, accounting, and correction." *Id.* ¶ 20. On Mach 24, 2026, Huntington issued a notice of default asserting that $480.30 was past due, plus a $15 charge, with an April 10, 2026, cure deadline. *Id.* ¶ 21. Plaintiff "disputed the asserted default and requested a complete transaction ledger, payment history, balance history, fee basis, owner or master-servicer identity, assignment records, furnishing logs, and repossession instructions." *Id.* ¶ 22. On April 28, 2026, Huntington responded to Plaintiff's dispute, stating that the account was past due, repossession would not be suspended, and no credit-profile adjustment would be made. *Id.* ¶ 23. Plaintiff contends that Huntington's response "did not provide a field-by-field reconciliation of the disputed records." *Id.*

On May 6, 2026, SCM repossessed the 2016 Honda Civic, which Plaintiff continued to dispute by "request[ing] human review, authenticated accounting, proof of authority, correction, make-whole relief, preservation, and return of the vehicle and unrelated personal property." *Id.* ¶¶ 25–26. Huntington then closed Plaintiff's account. *Id.* ¶ 27. On August 14, 2026, Huntington issued a written sale notice identifying the contract as a "Loan/Retail Installment Contract" and scheduling the public sale of the 2016 Honda Civic for September 3, 2026. *Id.* at 1 ¶ 2, at 4 ¶ 28. The sale notice stated that "Huntington has the property because Plaintiff allegedly 'broke promises in [their] agreement,' but it does not itself reconcile the identified transaction, payment, balance, furnishing, assignment, default, or closure issues." *Id.* at 4 ¶ 29. Plaintiff alleges various

damages resulting from the repossession including loss of use, substitute transportation, lost work, credit-reporting injury, costs from repossession, loss of personal property, payments subject to lawful refund, and other actual or statutory damages available. *Id.* ¶ 32A.

Plaintiff brings two claims under federal law and six Maryland law claims, alleging federal question and supplemental jurisdiction: violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), against Huntington (Count I); violation of 15 U.S.C. § 1692f(6) against SCM (Count II); three claims under Maryland Commercial Law § 9-625(a), § 12-1001 et seq., and § 12-1021 (Counts III–V), and claims for breach of contract, misrepresentation and collection of unauthorized amounts, and conversion (Counts VI–VIII). ECF 1.

## II. PLAINTIFF'S FEDERAL CLAIMS

### A. Legal Standard

Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level and require "more than labels and conclusions," as "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 561. Further, a pleading which sets forth a claim for relief (like a civil complaint) shall contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought.

Fed. R. Civ. P. 8(a). Each "allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 555).

**B. Fair Credit Reporting Act ("FCRA") Claim Against Huntington**

Count I alleges that Huntington violated 15 U.S.C. § 1681s-2(b), part of the FCRA, by failing to conduct a reasonable investigation of the information Plaintiff disputed. ECF 1, at 4 ¶ 36. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (first citing 84 Stat. 1128, 15 U.S.C. § 1681, then citing *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001)). "To this end, FCRA requires [consumer reporting agencies ("CRAs")] to follow procedures in reporting consumer credit information that both 'meet[] the needs of commerce' and are 'fair and equitable to the consumer.'" *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (alteration in *Saunders*) (quoting 15 U.S.C. § 1681(b)). A CRA is defined by the FCRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

"In addition to the duties it imposes on CRAs, FCRA also imposes duties on 'furnishers of information.'" *Id.* at 147–48. "While the statute does not explicitly define 'furnishers' of credit information, '[t]he most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government

agencies.'" *Himmelstein v. Comcast of the Dist., L.L.C.*, 931 F. Supp. 2d 48, 52 (D.D.C. 2013) (internal quotation marks omitted) (quoting *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 35 n.7 (1st Cir. 2010)). "[T]o bring a claim under § 1681s–2(b) of the FCRA, [a plaintiff] must establish: (1) that he notified [a] CRA[] of the disputed information; (2) that the CRA[] notified [the furnisher of information] of the dispute; and (3) that [the furnisher of information] then failed to investigate and modify the inaccurate information." *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md.), *aff'd,* 623 F. App'x 94 (4th Cir. 2015). Generally, "a plaintiff triggers a furnisher's duty to investigate by notifying the CRA of a dispute." *Cooke v. Carrington Mortg. Servs.*, Civ. No. TDC-18-0205, 2018 WL 6323116, at *10 (D. Md. Dec. 3, 2018) (citing *White v. GreenTree Serv., LLC,* 118 F. Supp. 3d 867, 874–75 (D. Md. 2015)).

Here, Plaintiff has failed to adequately allege that he informed a CRA of the disputed information. Plaintiff's only allegations concerning CRAs are that Plaintiff "sent . . . consumer-reporting disputes," ECF 1, at 3 ¶ 20, that "Plaintiff disputed objectively verifiable account information with consumer reporting agencies," and that "one or more" CRAs in turn notified Huntington of the dispute, *id.* at 4 ¶¶ 34–35. However, Plaintiff does not specify the CRAs he informed of the dispute, the date he informed the CRAs of the dispute, or any other non-conclusory allegation regarding the CRAs. *See generally* ECF 1. Consequently, Plaintiff has in turn also failed to allege that Huntington's duty to investigate under the FCRA was triggered. *See Cooke*, 2018 WL 6323116 at *10. And although Plaintiff appears to allege that he directly notified Huntington of the disputed information at various points, *see id.* at 3 ¶ 19–20, "notice by a consumer directly to the furnisher of the information does not trigger the furnisher's duties under section 1681s-2(b)." *Campbell v. Wells Fargo Bank, N.A.*, 73 F. Supp. 3d 644, 651 (E.D.N.C. 2014) (citing *Craighead v. Nissan Motor Acceptance Corp.*, No. 1:10cv981 (JCC/JFA), 2010 WL

5178831, at *4 (E.D. Va. Dec. 14, 2010), *aff'd,* 425 F. App'x 197 (4th Cir. 2011)). Accordingly, Plaintiff has failed to plausibly allege an FCRA claim against the Huntington.

**C. Fair Debt Collection Practices Act ("FDCPA") Claim Against SCM**

In Count II, Plaintiff alleges that SCM "participated in the repossession and recovery chain for Huntington" and did so "without authenticated records establishing the precise default, current party entitled to enforce, and present right to possession under the governing transaction." ECF 1, at 4 ¶¶ 40–41. Plaintiff appears to bring his claim under Section 1692f(6)(A) of the FDCPA ("§ 1692f(6)"), which prohibits debt collectors from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to take possession of the property claimed as collateral through an enforceable security interest." § 1692f(6). "Because the FDCPA does not define a present right to possession, [the Court] looks to state law to determine whether the security-interest enforcer had that right at the time of taking any action to foreclose." *Fiecke-Stifter v. MidCountry Bank*, 170 F.4th 1120, 1126 (8th Cir. 2026); *see also Labadie v. NU Era Towing & Serv. Co.*, 2023 WL 8708421 (2d Cir. Dec. 18, 2023) (assuming without deciding that a party's right to possession is determined under state law).

Maryland Commercial Law § 12-1021 ("§ 12-1021") provides that a creditor may repossess tangible property "if the consumer borrower is in default." § 12-1021(a)(1). The statute requires ten days' notice before a credit grantor repossesses any tangible property that states the default, any period at the end of which the tangible property will be repossessed, and the rights of the consumer borrower in case the tangible property is repossessed. § 12-1021(c). It further requires the creditor grantor to provide written notice within five days of repossession regarding the consumer's right to redeem the property, among other information. § 12-1021(e). If a creditor

grantor sells the property that was repossessed, they must similarly provide notice at least ten days before the sale. § 12-1021(j).

Here, Plaintiff does not allege any facts suggesting that Huntington or SCM violated these provisions by failing to provide any of the required notices. Instead, the complaint merely alleges that "Defendants did not provide an authenticated and reconciled basis establishing the precise default and present sale authority before repossession and planned sale." ECF 1, at 5 ¶ 55. However, the complaint alleges that Huntington issued a March 24, 2026, "Notice of Default, Right to Cure and Intent to Repossess" with an April 10, 2026, cure deadline, stating the amount that was past due. *Id.* ¶ 21. That notice was allegedly followed by an April 28, 2026, response to Plaintiff's dispute reiterating that the account was past due and repossession would not be suspended. *Id.* ¶ 23. The complaint also alleges that Huntington provided notice of the pending sale on August 14, 2026. *Id.* at 4 ¶ 28. Consequently, the complaint does not adequately allege that Huntington failed to provide required notices under law or otherwise lacked repossession authority. *See generally* ECF 1.

Outside of § 12-1021, Plaintiff does not allege any other facts suggesting that SCM did not have the right to possess the 2016 Honda Civic. Plaintiff's main allegations regarding his account are effectively that Huntington's records reflected conflicting information in the form of different original balances ($20,120 in bureau data versus $21,320.69 in the contract), different opening dates (August 1, 2025, versus August 23, 2025), different last payment dates (February 1, 2026, versus February 23, 2026), and a term of zero versus 72 months. ECF 1, at 3 ¶ 18. It is not clear how any of these discrepancies would support Plaintiff's contention that SCM did not have authority to repossess the vehicle if it was nonetheless in default. While Plaintiff states that he disputed whether his account was past due when he received the March 24, 2026, notice of default

from Huntington, he provides no details to suggest that he paid the allegedly past-due amount. *See id.* ¶¶ 21–22. Instead, Plaintiff states that he "has retained payment receipts, statement, bank records, and other payment evidence" and that a "concise Payment Schedule may be filed as a separate exhibit so each payment can be reconciled to principal, interest, fees, other charges, credits, and the remaining balance without overloading this pleading." *Id.* ¶¶ 24. But Plaintiff does not provide the payment schedule, nor specify how or whether those records would show that the account was not past due, nor actually allege that he had not defaulted on payment. *Id.* Because Plaintiff has not alleged facts sufficient to plausibly suggest that SCM did not have the right to possess his vehicle, he has failed to state a claim for relief under § 1692f(6). *Cf. Scott v. Trott Law, P.C.*, No. 24-1940, 2025 WL 2253734, at *3 (6th Cir. May 29, 2025) (finding plaintiff stated claim for relief when alleging that a debt collector initiated foreclosure proceedings despite all payments being current and the firm having no present right to possess his property.)

## III. JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

The complaint alleges that the Court has federal question jurisdiction over Plaintiff's FCRA and FDCPA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367. ECF 1, at 2 ¶¶ 9–10. Plaintiff does not allege that the Court has diversity jurisdiction, and any such allegation would appear to be meritless: even assuming the parties were diverse, the total amount financed by Plaintiff for the 2016 Honda Civic was $21,320.69, *id.* ¶ 14, well short of the required $75,000 threshold for diversity jurisdiction, *see* 28 U.S.C. § 1332(a)(1). Because Plaintiff has failed to state a claim under federal law and Plaintiff's only remaining claims are brought under Maryland law, it is unnecessary for the Court to screen those claims at this stage. Instead, as described in the next section, the Court will provide Plaintiff the opportunity to file a supplemental complaint regarding his federal claims.

## IV. SUPPLEMENT TO COMPLAINT

Because Plaintiff proceeds pro se and has potentially cognizable claims, he will be afforded the opportunity to file a supplement to his original complaint and to add the necessary factual details. The Court could order the filing of an amended complaint and is aware that supplemental pleadings typically relate to matters occurring subsequent to the filing of an initial complaint. *See Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (citing Fed. R. Civ. P. 15(d)). However, because the Court is only providing opportunity to supplement the complaint on the federal claims to ensure, if possible, that the Court can exercise jurisdiction, the Court finds that a supplement is the proper vehicle through which to add additional details to Plaintiff's federal claims.

In drafting his supplement, Plaintiff should, to the best of his ability, include specific allegations, such as they exist, to cure the issues identified in the preceding analysis. Specifically, Plaintiff should ensure that he has included specific facts related to each required element described in Section II of this Order ("Plaintiff's Federal Claims") for each federal claim that Plaintiff wishes to pursue.

## V. OTHER MOTIONS

Plaintiff's "motion for temporary restraining order, preliminary injunction, expedited hearing, and preservation order" ("TRO Motion"), ECF 3, will be denied as moot. The TRO Motion was filed on September 2, 2026, seeking preliminary injunctive relief to halt the public sale of the 2016 Honda Civic scheduled for 9:00 AM on September 3, 2026—the following morning. *Id.* Because the scheduled public sale date has passed, and the Court has not received any communication from Plaintiff representing that the sale was postponed, the TRO Motion is moot. *See United States v. Booz Allen Hamilton Inc.*, Civ. No. CCB-22-1603, 2022 WL 16553230, at *2 (D. Md. Oct. 31, 2022) (citing *Ry. Lab. Execs. Ass'n v. Cheapeake W. Ry*, 915 F.2d 116, 118

(4th Cir. 1990)) (denying injunctive relief as moot when the event sought to be enjoined had already transpired).

To the extent that Plaintiff's "emergency motion to proceed in forma pauperis; for expedited screening; issuance of summons; and service by the United States Marshals Service," ECF 4 (capitalization altered), requests emergency relief that was contingent upon the then-pending scheduled public sale, it will also be denied as moot for the same reason. *See Booz Allen Hamilton*, 2022 WL 16553230, at *2. Otherwise, the Court will grant Plaintiff's corrected motion to proceed in forma pauperis without prepaying fees or costs, docketed at ECF 7. The Court will defer directing the issuance of summonses and U.S. Marshal service of process forms until after Plaintiff has responded to this memorandum and order.

## VI. CONCLUSION

For the reasons stated, it is this 30th day of September, 2026, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis, ECF 7, is GRANTED;
2. Plaintiff's "emergency motion to proceed in forma pauperis; for expedited screening; issuance of summonses; and service by the United States Marshals," ECF 4 (capitalization altered), is DENIED AS MOOT.
3. Plaintiff's emergency motion for temporary restraining order, ECF 3, is DENIED AS MOOT.
4. Plaintiff IS GRANTED twenty-one (21) days from the date of this order to file a supplement to the complaint as directed above;
5. Plaintiff IS FOREWARNED that if the supplement is not timely filed, this case will be dismissed for failure to comply with this Order without further notice.
6. The Clerk is DIRECTED to correct the docket to reflect that ECF 7, a motion to proceed in forma pauperis, was filed by Plaintiff rather than Huntington.

7. The Clerk SHALL PROVIDE a copy of this Order to Plaintiff.

/s/
Brendan A. Hurson
United States District Judge